**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

DAVID CARROLL,                    CIVIL ACTION NO. 10-4737 (MLC)

     Plaintiff,                   **MEMORANDUM OPINION**

     v.

SETCON INDUSTRIES, INC., et al.,

     Defendants.

**COOPER, District Judge**

     Plaintiff, David Carroll, brings this action against
Defendants for negligence, product liability, and breach of express
and implied warranties relating to injuries suffered during the
course of his employment at Mountain Top Landscaping, LLC
("Mountain Top"). (See generally dkt. entry no. 39, 2d Am. Compl.)
Carroll originally brought action in state court on November 30,
2009, and raised claims only against Setcon Industries, Inc.
("Setcon"). (See generally dkt. entry no. 47-3, Compl.)  He
thereafter amended the Complaint and added Defendants James Reed
Sales, Inc. ("James Reed"), Peckham Industries, Inc. ("Peckham"),
and The Dow Chemical Company ("Dow"). (See generally dkt. entry
no. 47-4, Am. Compl.)

     The action was removed to this Court on September 15, 2010,
pursuant to 28 U.S.C. §§ 1332 and 1441(a). (Dkt. entry no. 1, Rmv.

Not.)  Dow impleaded Mountain Top as a party to the action on July 7, 2011.  (See generally dkt. entry no. 25, Third-Party Compl.) Carroll, after receiving leave from the Magistrate Judge, thereafter filed a Second Amended Complaint, adding Defendant TETRA Technologies, Inc. ("Tetra") to the action.  (See generally 2d Am. Compl.)

Tetra now moves to dismiss both the Second Amended Complaint, insofar as the Second Amended Complaint is raised against it, and any cross-claims asserted against it pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6).  Tetra argues, pursuant to N.J.S.A. § 2A:14-2 and Rule 15(c), that Carroll has not satisfied the requirements of the New Jersey Fictitious Party Rule, New Jersey Court Rule ("N.J.Ct.R.") 4:26-4 in filing the Second Amended Complaint, and thereby adding Tetra to the action.  (See dkt. entry no. 47-1, Tetra Br. at 2.)  Carroll opposes the Motion.  (See generally dkt. entry no. 48-2, Opp'n Br.)

The Court resolves the Motion on the papers and without oral argument pursuant to Local Civil Rule 78.1(b), and, for the reasons stated below, will deny the Motion.

## I.  Background

Carroll alleges that on or about December 1, 2007, while employed by Mountain Top, he sustained injuries after handling liquid calcium chloride ("LCC").  (See 2d Am. Compl. at ¶ 1; Opp'n

Br. at 1.)  LCC is a chemical substance used to pre-treat and treat walkways, driveways, and parking lots for snow and ice removal. (Opp'n Br. at 1.)

**A.  Pre-complaint Investigation**

Carroll retained counsel on May 22, 2008, and, on that date, informed Mountain Top's workers' compensation carrier, Broadspire Services, Inc. ("Broadspire"), of possible legal action.  (See dkt. entry no. 48-1, Pfeiffer Cert., Ex. A, 5-22-08 Letter from Pfeiffer to Broadspire.)  Carroll, between May 22, 2008 and September 21, 2009, contacted Mountain Top, Broadspire, and/or Broadspire's attorneys, Stahl & DeLaurentis, P.C. ("Stahl"), six times, but was unable to ascertain the names of the manufacturer or the distributor of the chemical that allegedly caused his injuries. (See id.; Pfeiffer Cert., Ex. B, 7-31-08 Letter from Pfeiffer to Broadspire; Pfeiffer Cert., Ex. C, 5-4-09 Letter from Pfeiffer to Stahl; Pfeiffer Cert., Ex. D, 8-7-09 Letter from Pfeiffer to Stahl; Pfeiffer Cert., Ex. F, 9-17-09 Letter from Pfeiffer to Stahl; Pfeiffer Cert., Ex. G, 9-21-09 Letter from Pfeiffer to Mountain Top.)  Carroll additionally alerted both Mountain Top and Stahl to the urgency of the requests as the statute of limitations was due to expire on December 1, 2009.  (See 9-17-09 Letter from Pfeiffer to Stahl; 9-21-09 Letter from Pfeiffer to Mountain Top.)

Carroll's investigation yielded no information until November 13, 2009, when Carroll was advised that the chemical substance was LCC, and the manufacturer and/or purchaser of the LCC was Setcon. (See Pfeiffer Cert., Ex. H, 11-13-09 Letter from Stahl to Pfeiffer (identifying Setcon as source of LCC used by Mountain Top).) Carroll, two weeks later, timely filed the Complaint wherein he asserts claims against Setcon and a fictitious party, John Doe. (See generally Compl.)

## B.   Carroll Discovers New Information Concerning the Identities and Potential Liabilities of Dow, James Reed, and Peckham

Carroll, on or about May 27, 2010, ascertained the identities and potential liabilities of additional parties.  (See Pfeiffer Cert., Ex. N, 5-27-10 Letter from Mitchell to Pfeiffer.)  On or about that date, Setcon informed Carroll that it purchased the LCC — that it delivered to Mountain Top — from James Reed and Peckham who, in turn, had purchased the LCC from Dow.  (See id.)[1]  Setcon additionally provided Carroll with an invoice demonstrating that it delivered the LCC to Mountain Top on November 26, 2007, several days before Carroll's accident.  (See id.)

Carroll, upon receiving this information, amended the Complaint and added James Reed, Peckham, and Dow as Defendants to

---

[1] James Reed is a subsidiary of Peckham.  (See dkt. entry no. 10, Peckham Corporate Discl. Stmt.; see also dkt. entry no. 11, James Reed Corporate Discl. Stmt.)

the action.  (See generally Am. Compl.)  Carroll again designated a

fictitious party, John Doe, in the Amended Complaint.  (See

generally id.)

    C.    **Carroll Discovers New Information Concerning the
          Identity and Potential Liability of Tetra**

          1.    **Carroll's Investigation Before November 18, 2011**

    Carroll, by the aforementioned actions and formal discovery,

found no evidence of Tetra's connection to the action.  (See Opp'n

Br. at 3; Tetra Br. at 9.)  Carroll thus did not identify Tetra as

a potential manufacturer and/or distributor of the LCC at issue

before November 18, 2011.  (See 11-13-09 Letter from Stahl to

Pfeiffer (responding on behalf of Mountain Top that Setcon was

"manufacturer and/or purchaser" of LCC at issue); 5-27-10 Letter

from Mitchell to Pfeiffer (identifying Dow, James Reed, and Peckham

as manufacturers and/or suppliers of LCC); Opp'n Br. at 3 (stating

that discovery produced by Setcon, James Reed, and Dow did not

identify Tetra); dkt. entry no. 2, Dow Corporate Discl. Stmt. (does

not identify Tetra); Peckham Corporate Discl. Stmt. (does not

identify Tetra); James Reed Corporate Discl. Stmt. (does not

identify Tetra).)

    Carroll attempted to further investigate the matter through

contact with Mountain Top, to little avail.  (See id.)  Several of

Carroll's pre-Complaint inquiries went unanswered or revealed no

information.  (See Pfeiffer Cert., Ex. E, 8-14-09 Letter from Stahl

to Pfeiffer.)  Carroll's attempts to depose Mountain Top were also
unsuccessful.  (<u>See</u> dkt. entry no. 35, 10-28-11 Letter Order
(requesting extension of discovery deadline in light of, <u>inter</u>
<u>alia</u>, Mountain Top's failure to provide dates for depositions).)

### 2.    Carroll's Additional Investigation Pursuant to Mountain Top's Response to Dow's Discovery Requests

Carroll first learned of Tetra's name and potential
involvement in the acts underlying the action on or about November
18, 2011, when he received Mountain Top's answers to Dow's requests
for discovery.  (<u>See</u> dkt. entry no. 47-2, Jabbour Cert., Ex. E,
Mountain Top's Resps. to Reqs. for Admiss.; Jabbour Cert., Ex. E,
Mountain Top's Answers to Interrogs.; <u>see also</u> Opp'n Br. at 3-4.)
Mountain Top, in response to Dow's interrogatories, produced a
Material Safety Data Sheet ("MSDS") for LCC prepared by Tetra and a
MSDS for LCC prepared by General Chemical Corporation ("General
Chemical").  (<u>See</u> Mountain Top's Answers to Interrogs.)  The MSDSs
provided general information about LCC including, <u>inter</u> <u>alia</u>, the
description, composition, safety precautions, and hazards.  (<u>See</u>
Jabbour Cert., Ex. E, Tetra Material Safety Data Sheet; <u>see also</u>
Jabbour Cert., Ex. E, Gen. Chem. Corp. Material Safety Data Sheet.)
The only other reference to Tetra among the forty-three pages of
discovery produced by Mountain Top appears in Mountain Top's
answers to interrogatories, and relates simply to the existence of

the Tetra MSDS.  (See Mountain Top's Answers to Interrogs. at no. 2.)

Carroll thus knew of Tetra on or about November 18, 2011, but was uncertain as to Tetra's relation to the action.  (See Opp'n Br. at 3-4.)  He therefore further investigated Tetra's involvement in the action.  When he deposed Setcon sales representative Joe Azzolino on December 15, 2011, he ascertained that Tetra might have sold LCC to Setcon during 2007.  (See Opp'n Br. at 3; Pfeiffer Cert., Ex. P, Azzolino Dep. at 18 (naming Tetra as a supplier to Setcon during 2007, but admitting that Setcon's 2007 purchase records had not yet been reviewed).)  Carroll thus requested that Azzolino provide Carroll with Setcon's 2007 purchase records.  (See id. at 18-19.)  Carroll made a second request to Setcon on January 19, 2012.  (See Pfeiffer Cert. at Ex. Q, 1-19-12 Letter from Pfeiffer to Pohlman.)  After Setcon failed to respond to Carroll's requests, Carroll served Tetra with a subpoena on February 24, 2012, requesting all records and MSDSs exchanged between Tetra and Setcon during 2007.  (See Pfeiffer Cert., Ex. R, 2-24-12 Letter from Savoia to Pohts.)[2]

---

[2] Carroll additionally served General Chemical with a subpoena.  (See Pfeiffer Cert., Ex. S, 3-5-12 Letter from Pfeiffer to Barriere, et al.)  Carroll, as a result, learned that General Chemical stopped manufacturing and/or distributing LCC on or about January 15, 2005.  (See id.)  Carroll determined that General Chemical could not therefore have manufactured and/or distributed the LCC that injured Carroll.  (See id.)

Carroll's continued investigation verified Tetra's connection to the action.  (See Pfeiffer Cert., Ex. T, 3-8-12 Letter from Pfeiffer to Barriere, et al.)  Carroll, on or about March 2, 2012, received from Tetra documentation confirming that Tetra had, in fact, supplied Setcon with LCC during 2007.  (See id.)  Tetra produced records indicating that it delivered LCC to Setcon on two occasions, i.e., on: (1) March 9, 2007; and (2) November 27, 2007. (See id.)

Carroll, however, remained uncertain of Tetra's connection to the action after determining that Tetra's involvement appeared remote.  (See id.)  He notified Setcon, Dow, Peckham, James Reed, and Mountain Top on March 8, 2012, and requested their response to his determination that Tetra need not be joined in the action given that Tetra's only shipments of LCC to Setcon occurred: (1) eight months before Setcon delivered LCC to Mountain Top; and (2) one day after Setcon delivered LCC to Mountain Top.  (See id. ("Unless I hear to the contrary on or before March 26, 2012 I will assume that all present Defendants are in agreement that Tetra is not a viable defendant and that no present Defendant intends to claim Tetra's involvement as a defense to Plaintiff's present claims.").)  The parties thereafter convened by telephone for a Status Conference on April 4, 2012.  (See dkt. entry no. 40, 4-9-12 Status Conf. Order.)

The Magistrate Judge, pursuant to the April 4, 2012 Status
Conference, granted Carroll leave to amend the Complaint and
thereby add Tetra as a party to the action.  (See id.)  Carroll
accordingly filed the Second Amended Complaint on April 5, 2012,
wherein he substituted Tetra for John Doe.  (See generally 2d Am.
Compl.)

## II.  Discussion

### A.  Standard of Review

The Court, when reviewing a motion to dismiss under Rule
12(b)(6), accepts all factual allegations contained in the
complaint as true and construes the complaint in the light most
favorable to the plaintiff.  See Mann v. Brenner, 375 Fed.Appx.
232, 235 (3d Cir. 2010).  The Court also considers the "exhibits
attached to the complaint, matters of public record, and documents
that form the basis of a claim."  Turner v. Leggett, 421 Fed.Appx.
129, 131 (3d Cir. 2011) (quotation marks and citation omitted).  To
survive a motion to dismiss, the complaint must state enough
factual matter to plausibly suggest that the plaintiff is entitled
to relief.  See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); see
also Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).

### B.  Relation Back Pursuant to Rule 15(c)

An amended pleading may relate back to the filing date of an
original pleading, pursuant to Rule 15(c), if the applicable

statute of limitations provides for such "relation back."  See Fed.R.Civ.P. 15(c)(1)(A) ("An amendment to a pleading relates back to the date of the original pleading when: the law that provides the applicable statute of limitations allows relation back[.]"). New Jersey law provides the statute of limitations for this action; therefore, New Jersey law also determines whether the Second Amended Complaint relates back to the filing date of the Complaint. See Padilla v. Twp. of Cherry Hill, 110 Fed.Appx. 272, 276 (3d Cir. 2004).  The limitation period in New Jersey for a personal injury action is two years.  See N.J.S.A. § 2A:14-2.

    **C.**   **New Jersey Fictitious Party Rule**

A New Jersey plaintiff invokes the Fictitious Party Rule, N.J.Ct.R. 4:26-4, to initiate process against a party whose identity is unknown at the time a complaint is filed.  See N.J.Ct.R. 4:26-4.  New Jersey courts permit an action to proceed under the Fictitious Party Rule if the: (1) defendant's true name was unknown to the plaintiff when the action was initiated; (2) complaint designates a fictitious party and appropriately describes the defendant; and (3) plaintiff, on motion, amends the complaint after ascertaining the defendant's true name.  See id.; see also Farrell v. Votator Div. of Chemetron Corp., 299 A.2d 394, 399-400 (N.J. 1973).  It is therefore possible for the plaintiff to assert an action against a previously unknown defendant after the statute

of limitations has expired.  See N.J.Ct.R. 4:26-4; see also Farrell, 299 A.2d at 399-400.

The Fictitious Party Rule is liberally applied when "justice impels strongly toward affording plaintiffs their day in court." Farrell, 299 A.2d at 400; see also Viviano v. CBS, Inc., 503 A.2d 296, 302 (N.J. 1986) (permitting amendment to relate back despite plaintiff's failure to even designate a fictitious party in complaint).  A plaintiff invoking the Fictitious Party Rule must have exercised diligence in ascertaining the defendant's true name. See DeRienzo v. Harvard Indus., Inc., 357 F.3d 348, 353 (3d Cir. 2004).  The defendant, additionally, may not be prejudiced by its late addition to the action.  Claypotch v. Heller, Inc., 823 A.2d 844, 848 (N.J. App. Div. 2003).

## III. Analysis

### A.   Carroll Properly Invoked the Fictitious Party Rule

The Court finds that Carroll properly invoked the Fictitious Party Rule by designating a fictitious party, John Doe, in the Complaint and subsequent amendments thereto.  Carroll's use of the Fictitious Party Rule passes judicial scrutiny because Carroll: (1) was unaware of Tetra's name at the time the Complaint was filed; (2) designated, in both the Complaint and Amended Complaint, a fictitious party that appropriately described Tetra; and (3) sought leave to file the Second Amended Complaint after learning of

Tetra's identity and involvement in the acts underlying this action.

### 1.    Tetra's Name was Unknown to Carroll when the Action was Initiated

Carroll learned of Tetra's name for the first time on or about November 18, 2011, when he received discovery produced by Mountain Top.  (See Opp'n Br. at 3; Mountain Top's Resps. to Reqs. for Admiss.; Mountain Top's Answers to Interrogs.)  He was unaware of Tetra's name at the time the action was originally initiated.  (See Opp'n Br. at 3-4.)

### 2.    Carroll Designated a Fictitious Party in the Complaint and the Amended Complaint

Carroll, in the Complaint, designated a fictitious party, John Doe, and retained that designation in the Amended Complaint.  (See generally Compl.; Am. Compl.)  Carroll's description of John Doe appropriately described Tetra because Tetra is an alleged manufacturer and/or distributor of the LCC that caused Carroll's burn injuries.  (See Am. Compl. at ¶ 2 (describing John Doe as an unknown party "who/which may have played any role whatsoever in contributing to the injuries and damages described").)  See also Viviano, 503 A.2d at 304-05 (construing complaint liberally where fictitious party "could have been more precisely drawn").

###### 3.    Carroll Amended the Complaint After Ascertaining Tetra's Name

Carroll sought and was granted leave to file an amended Complaint soon after learning of Tetra's name and connection to the action.  (See 4-9-12 Status Conf. Order.)  Carroll thereafter filed the Second Amended Complaint, substituting Tetra for John Doe. (See generally 2d Am. Compl.)  Carroll timely served Tetra with the Second Amended Complaint.  (See generally dkt. entry no. 46, Serv. Aff.)

Tetra contends that Carroll "made no attempt to meet any of the requirements of the [fictitious party] rule." (Tetra Br. at 5.)  It argues that Carroll was not diligent and also argues that it is prejudiced by its joinder.  (See id.)  The Court has considered Tetra's arguments, but concludes, for the reasons set forth below, that those arguments lack merit.

###### B.    Carroll Exercised Sufficient Diligence

Sufficient diligence is determined on a case-by-case basis. Compare DeRienzo, 357 F.3d at 354 (finding sufficient diligence even though plaintiff was "thwarted in his investigation by misinformation from government witnesses"), and Prystowsky v. TGC Stores, Inc., No. 07-0072, 2011 WL 3516174, at *4 (D.N.J. Aug. 11, 2011) (determining that sending subpoenas, investigating potential defendants, and taking depositions constituted diligence despite ensuing delays), with Matynska v. Fried, 811 A.2d 456, 457 (N.J.

13

2002) (reasoning that plaintiff's failure to ascertain defendant's name from plaintiff's own hospital records constituted a lack of diligence), and Mears v. Sandoz Pharm., Inc., 693 A.2d 558, 631-32 (N.J. App. Div. 1997) (finding lack of sufficient diligence where "a simple inquiry at the job site" would have revealed defendant's name).  The threshold for sufficient diligence, however, is generally met when a plaintiff "consistently [takes] steps to identify" a defendant's name before and after filing a complaint. See DeRienzo, 357 F.3d at 353, 355.

The Court now concludes that Carroll, who consistently took steps to identify the manufacturer and distributor of the LCC, was sufficiently diligent.  See DeRienzo, 357 F.3d at 354; see also Prystowsky, 2011 WL 3516174, at *4.  Carroll, before commencing the action, made numerous attempts to identify the manufacturer and distributor of the LCC.  (See 5-22-08 Letter from Pfeiffer to Broadspire; 7-31-08 Letter from Pfeiffer to Broadspire; 5-4-09 Letter from Pfeiffer to Stahl; 8-7-09 Letter from Pfeiffer to Stahl; 9-17-09 Letter from Pfeiffer to Stahl; 9-21-09 Letter from Pfeiffer to Mountain Top.)  When Stahl finally identified Setcon as the manufacturer and/or distributor of the LCC, Carroll timely filed the Complaint and raised claims against a fictitious party because the expiration of the statute of limitations was nearing. (See 11-13-09 Letter from Stahl to Pfeiffer.)

14

Carroll similarly continued to take such steps after filing
the Complaint.  Carroll, after commencing the action, reviewed
Defendants' corporate disclosure statements, sent discovery
requests to Defendants, deposed Azzolino, and served subpoenas on
both Tetra and General Chemical.  (See Opp'n Br. at 3; see also
2-24-12 Letter from Savoia to Pohts; 3-15-12 Letter from Pfeiffer
to Barriere, et al.)  Carroll additionally attempted to depose a
representative of Mountain Top, though he was ultimately unable to
do so.  (See 10-28-11 Letter Order.)

Tetra argues that Carroll was not diligent because he failed
to issue a subpoena to Mountain Top.  (Tetra Br. at 7.)  The Court
disagrees.  We recognize that Carroll had difficulty obtaining
information from Mountain Top, but conclude that Carroll was
sufficiently diligent because he did not merely fail to make a
"simple inquiry."  (Id.)  Carroll, instead, made several inquiries
that were met with responses that failed to disclose the connection
to Tetra.  Cf. Prystowsky, 2011 WL 3516174, at *4 (reasoning that a
defendant's failure "to make full disclosures to the plaintiff
. . . should be taken into account when determining whether
plaintiff has met the due diligence requirement").  The Court is
satisfied that Carroll's investigation before and after filing the
Complaint met the threshold for sufficient diligence.  See
DeRienzo, 357 F.3d at 356 (acknowledging that, while plaintiff

15

"could have done more," four Freedom of Information Act requests, an expert witness consultation, and two depositions constituted "enough" diligence).

The action is unlike Matynska.  In Matynska, the plaintiff invoked the Fictitious Party Rule to add a doctor as a defendant after commencing an action for medical malpractice.  See 911 A.2d at 457.  The plaintiff was not entitled to use of the rule because the doctor's name had appeared twice in the plaintiff's own medical records, yet she failed to identify the doctor as her surgeon's partner.  See id.  Here, Carroll did not possess the MSDS that identified Tetra until after November 18, 2011.  Carroll thus had no obligation to investigate Tetra as a potentially responsible party until after ascertaining Tetra's name on or about November 18, 2011 given that Carroll's due diligence conducted before that date did not identify Tetra's name or produce Tetra's MSDS.  Cf. id. (finding that plaintiff "had an obligation to investigate all potentially responsible parties in a timely manner but did not do so").

The action is also unlike Mears.  In Mears, the court found that the plaintiff was aware of the defendant general contractor's name before initiating the action because it: (1) was a "big name" in the contracting business; (2) appeared on a trailer located at the job site; and (3) was, in fact, believed by the plaintiff,

before the complaint was filed, to be the name of the general contractor.  See 693 A.2d at 631.  The court in Mears also found that a "simple inquiry" made at the job site after the accident occurred would have revealed another defendant's name.  Id. at 631-32.

Carroll, in contrast to the plaintiff in Mears, was not aware of Tetra's name when the Complaint was filed, and was unable to ascertain Tetra's name even after making several requests to Mountain Top, Broadspire, and Stahl for such information.  (See 11-13-09 Letter from Stahl to Pfeiffer.)  Carroll was also not in possession of Tetra's MSDS at that time.  (See Mountain Top's Resps. to Reqs. for Admiss.; Mountain Top's Answers to Interrogs.)  Furthermore, neither Setcon's purchase orders and delivery confirmations nor answers to discovery revealed Tetra's name.  (See id.; see also Opp'n Br. at 3.)  Similarly, discovery responses produced by Dow and Peckham failed to identify Tetra.  (See Opp'n Br. at 3.)  Carroll ultimately learned of Tetra's potential liability only by deposing Azzolino after Mountain Top's answers to Dow's discovery requests identified Tetra's name.  (See Azzolino Dep. at 18.)

The Court finds that Tetra's name was unknown to Carroll at the time the Complaint was filed, but that Carroll consistently took steps to identify Tetra's name before and after filing the

Complaint.  Tetra argues that Carroll could have done more, but in
so arguing disregards his other efforts.  The Court accordingly
concludes that Carroll exercised sufficient diligence in invoking
the Fictitious Party Rule.

### C.    Tetra is Not Prejudiced by the Delay

"The good faith and reasonableness of plaintiffs' conduct must
be measured against a claim of prejudice to defendants." Aruta v.
Keller, 342 A.2d 231, 235 (N.J. App. Div. 1975).  Factors
considered in determining whether a defendant is prejudiced by the
delay in filing the amendment include "destruction or alteration of
evidence after the initial discovery process, frustration of
attempts at subsequent examination, or witness unavailability or
memory lapse due to delay." DeRienzo, 357 F.3d at 356; see also
Farrell, 299 A.2d at 400.

Tetra argues that it is prejudiced by the: (1) exchange of
discovery that has already taken place; (2) five month delay in
filing the Second Amended Complaint; and (3) expiration of the
discovery deadline. (See Tetra Br. at 8-9.)  Tetra further argues
that its "ability to properly defend" itself in this matter has
been "significantly impaired." (See id. at 9.)

The Court has considered Tetra's arguments and concludes that
Tetra is not prejudiced by its addition to the action.  Tetra has
failed to demonstrate actual prejudice; it has not shown that

18

evidence has been destroyed or altered, has not produced evidence
of frustrated attempts to examine witnesses or evidence, and has
not shown that witnesses are, in any respect, now unavailable.  See
DeRienzo, 357 F.3d at 356-57 (finding prejudice not established
where defendant failed to show that neither inspection of
helicopter and rocket launcher nor testimony of witnesses was
unavailable as a result of delay); see also Mears, 693 A.2d at 564
(finding that defendants would be prejudiced by both inability to
examine scaffolding that caused plaintiff's injuries and employees'
failure to recall accident).  The Magistrate Judge, moreover, has
ordered Carroll to supply Tetra with all discoverable material that
he has received to date.  (4-9-12 Status Conf. Order.)  If Tetra
requires additional discovery, it may seek leave to conduct such
discovery before the Magistrate Judge.  See DeRienzo, 357 F.3d at
357 (reasoning that defendant was not prejudiced because court
would likely grant defendant's request to conduct additional
discovery).

     The Court further concludes that any delay in filing the
Second Amended Complaint is not, as Tetra argues, unjustifiable.
(Tetra Br. at 9.)  Carroll first learned of Tetra's name on or
about November 18, 2011.  (See Opp'n Br. at 3-4; see also Mountain
Top's Answers to Interrogs.)  He thereafter exercised due diligence
to evaluate whether Tetra was a relevant party to the action.

Carroll specifically, about one month after receiving Tetra's MSDS, deposed Azzolino. (See Azzolino Dep.; Opp'n Br. at 3.) Carroll then attempted to obtain purchase orders demonstrating that Tetra had indeed delivered LCC to Setcon during the relevant year. (See 1-19-12 Letter from Pfeiffer to Pohlman.) When these attempts went unanswered, Carroll, on February 24, 2012, issued a subpoena to Tetra. (See 2-24-12 Letter from Savoia to Pohts.) Carroll also consulted the other parties on March 8, 2012, attended the Status Conference on April 4, 2012, and sought leave to file an amendment on April 4, 2012. (See 3-8-12 Letter from Pfeiffer to Barriere, et al.; 4-9-12 Status Conf. Order.) He accordingly filed the Second Amended Complaint on April 5, 2012, one day after receiving leave to do so. (See generally 2d Am. Compl.) The delay was therefore a practical consequence of Carroll investigating Tetra's relation to the action and seeking leave to add Tetra as a defendant.

The action is similar to DeRienzo, wherein the plaintiff, who was injured in a helicopter crash caused by a defective rocket launcher, added the defendant's name several months after the statute of limitations expired. See 357 F.3d at 350-51. A newly discovered logbook identified the defendant as a supplier of stacking lugs used in the production or modification of the rocket launcher, but not necessarily the particular stacking lugs used in the assembly of the rocket launcher that caused the accident. Id.

at 351-52.  The court in DeRienzo found "no apparent reason" to
connect the defendant to the action until after witness testimony
corroborated the potential link; the information contained in the
logbook alone was not enough.  Id. at 355 (finding that the
connection implied by the logbook alone "appeared tenuous").
Tetra's MSDS similarly revealed that Tetra manufactured and/or
distributed LCC, but not necessarily the LCC that injured Carroll.
This tenuous connection is further illustrated by the MSDS created
by General Chemical that did not in fact establish a connection
between that party and this action.  The MSDS alone was therefore
not enough to verify Tetra's potential liability.

Tetra, furthermore, cannot claim that a five month delay, in
and of itself, impairs Tetra's ability to defend the action without
further explaining what that impairment entails.  (Tetra Br. at 9.)
The passage of time alone does not constitute sufficient prejudice.
See Williams v. Hurlings, No. 08-3377, 2011 WL 3890976, at *5
(D.N.J. Aug. 29, 2011) ("Defendant's bare assertion that five years
ha[d] elapsed since Plaintiff's arrest [was] insufficient to
establish prejudice.").  Permitting such an argument would obviate
both Rule 15(c) and the Fictitious Party Rule, which exist
precisely to afford flexibility to a plaintiff whose action might
otherwise be barred by a statute of limitations.  See Baker v. J.J.
De Luca Co., Inc., No. A-3315-07T2, 2008 WL 4648235, at *10 (N.J.

App. Div. Oct. 10, 2008) ("A motion to dismiss on statute of
limitations grounds in the context of fictitious party practice is
governed by the 'interests of justice.'"); see also Jordan v.
Tapper, 143 F.R.D. 575, 581 (D.N.J. 1992) ("Prejudice will not be
found in defendant's inability to assert the statute of limitations
as a defense[.]").

    The Court concludes that Tetra has failed to demonstrate that
it suffers from actual prejudice by being joined to this action.
The Court is satisfied that, here, considerations of individual
justice outweigh considerations of repose.  See Farrell, 299 A.2d
at 396 (holding that "where . . . plaintiff does not know or have
reason to know that he has a cause of action against an
identifiable defendant until after the normal period of limitations
has expired, the considerations of individual justice and the
considerations of repose are in conflict and other factors may
fairly be brought into play").

> Justice impels strongly towards affording the plaintiffs
> their day in court on the merits of their claim; and the
> absence of prejudice, reliance or unjustifiable delay,
> strengthens the conclusion that [the complaint may be
> amended] . . . without any undue impairment of the two
> year limitation or the considerations of repose which
> underlie it.

Jordan, 143 F.R.D. 575 at 581-82 (citation omitted).

**IV.   Conclusion**

The Court concludes, for the reasons stated above, that the Second Amended Complaint relates back to the filing date of the Complaint pursuant to Rule 15(c), and the claims against Tetra are therefore not barred by the statute of limitations.  The Court will, for good cause appearing, accordingly deny the Motion and issue an appropriate Order.


                                    s/ Mary L. Cooper
                                    **MARY L. COOPER**
                                    United States District Judge


Dated: August 6, 2012